*669
 
 Opinion
 

 COBEY, Acting P. J.
 

 Hemy Friedman appeals from an order overruling his objections to the report of the inheritance tax referee and assessing an inheritance tax against his son, Richard H. Friedman, of $15,244. The appeal lies. (Prob. Code, § 1240.)
 

 The trial court found that the
 
 inter vivos
 
 trust agreement between Flemy and his wife, Bella, the decedent, did not grant to Henry as trustee a general power of appointment over the corpus of the trust
 
 [1]
 
 and concluded therefore that this agreement did not contain a general power of appointment within the meaning of section 13692 of the Inheritance Tax Law. (See § 13301.) We disagree and will reverse for reasons that follow.
 

 Discussion
 

 Since 1965
 
 (Estate of Nunn
 
 (1974) 10 Cal.3d 799, 805 [112 Cal.Rptr. 199, 518 P.2d 1151]) a general power of appointment has been defined in the law as meaning a power which is exercisable in favor of, among others, a grantor (§ 13305), but under the law a power to consume, invade or appropriate property for the benefit of the grantor, which is limited by an ascertainable standard relating to the health, education, support or maintenance of the grantor, shall not be deemed to be a general power of appointment. (§ 13692, subd. (a).)
 

 Henry’s position is that the provision of the trust agreement, just quoted in footnote 1, granted to him a general power of appointment over the decedent’s community property interest in the trust property that passed on her death to him as trustee. The Controller’s position is that Henry’s power to invade and consume the corpus of the Friedman trust is not a power of appointment within the meaning of section 13694 of the
 
 *670
 
 law at all, but is instead a transfer subject to a contingency and therefore taxable under section 13411, subdivision (a) of the law.
 

 We agree with Henry. Under the already quoted provision of the trust agreement, his power as trustee to invade and consume the corpus of the trust is not limited by an ascertainable standard relating to his own health, education, support or maintenance. Instead he may invade and consume “in his uncontrolled discretion,” to the extent he deems it “necessary for . . . [his] proper support, care, maintenance and education.” “Uncontrolled discretion” means that Henry in invading and consuming the corpus for the specified purposes for his own benefit is not held to a standard of reasonableness, but instead only to one of good faith. (See Civ. Code, § 2269;
 
 Coberly
 
 v.
 
 Superior Court
 
 (1965) 231 Cal.App.2d 685, 689 [42 Cal.Rptr. 64];
 
 Estate of Gross
 
 (1963) 216 Cal.App.2d 563, 567 [31 Cal.Rptr. 281].)
 
 [2]
 
 Such a standard is not ascertainable. It is not reasonably measurable in terms of the purposes specified. (See Cal.Admin. Code, tit. 18, § 13692.3;
 
 Estate of Nunn, supra,
 
 10 Cal.3d at pp. 803-809.)
 

 The Controller’s position in this case is completely untenable. First, he argues that the mere statement in the trust agreement of the specific purposes for the invasion of the corpus constitutes, in and of itself, the requisite ascertainable standard with respect to such purposes. This is a totally unjustified rewriting of the relevant portion of the applicable subdivision. Subdivision (a) of section 13692 refers to a power to consume, etc. which is limited by an
 
 ascertainable standard
 
 relating to the health, education, support or maintenance of the grantor. The term “ascertainable standard” is an integral part of the statute and may not be written out of it. A statement of the requisite purposes for invasion and consumption by itself fails to include the necessary ascertainable standard. (E
 
 state of Allgeyer
 
 (1976) 60 Cal.App.3d 169, 171-172, 174 [129 Cal.Rptr. 820].)
 

 Secondly, the Controller contends, as already noted, that Henry’s power as trustee of invasion and consumption of the corpus is not a power of appointment at all under the law, but is instead simply a transfer to him of the trust property subject to a contingency within the meaning of section 13411 of the law.
 
 [3]
 
 In making this contention, the Cont
 
 *671
 
 roller ignores the fact that powers to invade and consume corpus of the type found here have been held, often with his active support, quite regularly to be general powers of appointment. (See
 
 Estate of Nunn, supra,
 
 10 Cal.3d at pp. 803, 805;
 
 Estate of Morse
 
 (1970) 9 Cal.App.3d 411, 414-416 [88 Cal.Rptr. 52];
 
 Estate of Allgeyer, supra,
 
 60 Cal.App.3d at pp. 171-172.) He also ignores the fact that, read together, sections 13692, subdivision (a), and 13693 of the law clearly make a power to consume and invade of the type before us that (unlike our power) is limited by an ascertainable standard relating to health, education, support or maintenance,
 
 expressly
 
 a limited power of appointment. Finally, the exact contention of the Controller was rejected some 40 years ago in
 
 Estate of Elston
 
 (1939) 32 Cal.App.2d 652, 655-656 [90 P.2d 608], on the ground that specific statutes prevail over general ones.
 

 Disposition
 

 The order fixing the inheritance tax by reason of the death of Bella Friedman is reversed for further proceedings consistent with the views expressed in this opinion.
 

 Allport, J., and Potter, J., concurred.
 

 A petition for a rehearing was denied July 27, 1979, and respondents’ petition for a hearing by the Supreme Court was denied September 6, 1979. Bird, C. J., did not participate therein.
 

 [1]
 

 The relevant portion of the agreement (art. II A) reads as follows: “As long as Husband [Henry Friedman] is alive, Trustee [Henry Friedman] shall pay to or apply for the benefit of Grantors [Henry and Bella Friedman], or either of them, all of the net income and
 
 as much of the principal of the Trust as Trustee in his uncontrolled discretion shall deem necessary for their proper support, care, maintenance, and education,
 
 after taking into consideration, to the extent Trustee shall deem advisable, any other available income or resources known to Trustee outside of this Trust; provided, however, that Trustee shall not be obligated to ascertain or discover such other income or resources.” (Italics added.) The agreement also provides that it may not be “altered, amended, modified, or revoked from and after the date of death of the first Grantor to die.” All code section references hereafter are to the Revenue and Taxation Code unless otherwise indicated.
 

 [2]
 

 Whether a particular formulation constitutes an ascertainable standard depends upon the effect state law gives to the language in question.
 
 (Estate of Nunn, supra,
 
 10 Cal.3d at p. 806.)
 

 [3]
 

 The Controller in his brief cites
 
 Estate of Kupser
 
 (1971) 17 Cal.App.3d 919, 926-928 [95 Cal.Rptr. 279], as supportive of his view, but that case involved a power of invasion of the
 
 *671
 
 corpus by a trustee for the benefit of a third person rather than for the benefit of a grantor, as here. The latter situation comes within the definition of a general power of appointment found within section 13692 as amplified by section 13305 of the law. The former situation does not.